IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 2000 Session

## STATE OF TENNESSEE v. RAYMOND JACKSON COLLINS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S40, 977     R. Jerry Beck, Judge**

---

**No. E1999-00233-CCA-R3-CD**
**September 29, 2000**

---

The defendant appeals from his conviction of, and four-year sentence for, violation of a habitual traffic offender order, failure to stop for a red light, and violation of the seat belt law. He asserts that insufficient evidence supported the verdict, that the imposed sentence was excessive, and that the trial court improperly denied alternative sentencing. We affirm the convictions and sentence, holding that sufficient evidence supported the verdict and that the trial court properly sentenced the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Joseph F. Harrison, Assistant Public Defender, for the appellant, Raymond Jackson Collins.

Paul G. Summers, Attorney General & Reporter; Patricia C. Kussmann, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Mary Katharine Harvey, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The defendant, Raymond Jackson Collins, was stopped by a Kingsport police officer after he failed to stop at a traffic light. Subsequently, the defendant was charged with violation of a habitual traffic offender order, failure to stop at a red light, possession of drug paraphernalia, violation of an open container law, and violation of the seat belt law. Convicted of all but the paraphernalia and open container charges, the defendant received a four-year sentence on the habitual traffic offender conviction, with his sentences for the remaining misdemeanor convictions limited to the fines imposed by the jury.

## Background

At trial, the state's first witness was Monica Powers, a Kingsport Police Department patrol officer. While on patrol one evening, at approximately 10:45 p.m., she approached a vehicle stopped at a red light. She noted that the vehicle had its right turn signal activated. The vehicle did not and could not attempt a right turn, however, because the right turn exit had been passed before the vehicle had reached the stop light. The light turned green, the vehicle proceeded to another light, and Powers noted that this second light, yellow as they approached, turned red before the vehicle in front of her reached the intersection. Powers said that the vehicle did not stop or even slow down and that the brake lights did not even flash. At that point, she initiated her blue lights and proceeded through the red light. The vehicle continued without slowing, and, after she activated her siren, the vehicle pulled into the far right lane and proceeded down the roadway. After between one-fourth and one-half of a mile, the vehicle pulled into a parking lot and stopped in a parking space.

Approaching the vehicle, Powers, who clearly viewed the defendant from the time he stopped, noticed that the driver was not wearing a seat belt. When she requested his drivers license and registration, the driver, the defendant, handed her a Virginia identification card.

After the defendant was removed from the vehicle, Powers and the responding officer noticed open beer cans in the front passenger floorboard. Further, in the driver's side seat, the fabric was ripped. In this ripped fabric she found a metal pipe, with what she believed to be the odor of marijuana. She testified that the Tennessee Bureau of Investigation Crime Lab in Knoxville was unable to verify the presence of controlled substance in the pipe.

Powers also testified that the defendant's movements as she approached his vehicle were inconsistent with that of one unbuckling a seatbelt: In effect, he was leaning forward to make shifting motions, not turning to unlatch a buckle.

Officer Todd Harrison also testified. On the date in question, he was also assigned to the patrol division of the Kingsport Police Department. Harrison testified that Powers' drivers license check on the driver indicated that the defendant was a habitual traffic offender, and she subsequently placed him under arrest.

At trial, the defendant stipulated that on November 24, 1997, he was a habitual offender pursuant to an order entered on February 26, 1993, in the Sullivan County Criminal Court, and such order prohibited him from operating a motor vehicle upon a public road, street, or highway in Tennessee. Further, the parties stipulated that Collins was in court when the order was entered and received a copy of this order, an order in full force and effect on the date of his arrest.

The jury found the defendant guilty of violation of the habitual traffic offender order, failure to stop for a red light, and violation of the seat belt law, but acquitted him of possession of drug paraphernalia and violation of the open container law.

At the sentencing hearing on July 15, 1999, the trial court reviewed the defendant's criminal history. The trial court determined that the defendant had a prior record of criminal activity and convictions exceeding those needed to establish Range II offender status. Further, the trial court found as an enhancing factor that the defendant failed to obey conditions of release into the community. In mitigation, the trial court found only that the defendant's criminal conduct neither caused nor threatened serious bodily injury or death.

The defendant testified at the sentencing hearing, stating that he pays fifty-two dollars weekly as child support and that he was awaiting the birth of his second child. The defendant installed floors, carpet, vinyl, and similar materials for his living. He admitted to past problems with drugs, especially marijuana and alcohol. The defendant requested consideration for Community Corrections and stated that he would comply with any and all terms or conditions of alternative sentencing.

On cross-examination, the defendant conceded that since the charge incurred on November 24, 1997, he had received two convictions for violations of the Habitual Offender Act in Virginia. He admitted to using marijuana approximately three and a half weeks before the sentencing hearing.

The court determined that the enhancing factors far outweighed the single mitigating factor. Therefore, the trial court sentenced the defendant as a Range II offender to the maximum four years for the habitual traffic offender offense. That court imposed no incarceration for the remaining two Class C misdemeanor offenses.

## Analysis

### *Sufficiency of Evidence*

The defendant states three proposed issues that collectively question the sufficiency of evidence supporting the verdict. He contends that: (1) the verdict of the jury was contrary to the law and the evidence; (2) the evidence in the record is insufficient as a matter of law to sustain the convictions; and (3) the evidence in the trial preponderates against the guilt of the defendant and in favor of his innocence.

When a defendant challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor reevaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The defendant was convicted under Tennessee's Motor Vehicle Habitual Offenders Act. See Tenn. Code Ann. § 55-10-601 to -618. Therefore, the State was required to prove that the defendant was operating a motor vehicle in this state while a judgment or order of the court prohibiting him from driving remained in effect. See Tenn. Code Ann. § 55-10-616(a). At trial, both parties stipulated as follows:

> On November 24, 1997, the defendant, Raymond J. Collins, was a Habitual Traffic Offender pursuant to an order entered on February 26, 1993, in the Criminal Court for Sullivan County, Tennessee declaring Raymond J. Collins to be a Habitual Traffic Offender and prohibiting him from operating a motor vehicle upon a public road, street, or highway. Raymond J. Collins was in court at the time the order was entered and was served with a copy of that order. The Habitual Traffic Offender order was in full force and effect on November 24, 1997.

At trial, the police officer testified that she stopped the defendant for running a red light and for failing to wear a seat belt. The officer further testified that during the stop she determined that the defendant was operating the vehicle in violation of the Motor Vehicle Habitual Offender's Act. The jury obviously accredited the officer's testimony. This was the jury's prerogative. We will not disturb the findings of the jury, and find that there was sufficient evidence to support the defendant's convictions.

### *Sentencing*

The defendant asserts two challenges against his sentence. First, he argues that since the trial court applied one mitigating factor, the imposed sentence should have been less than the maximum. Second, he asserts that the trial court erred by denying Community Corrections. This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

-4-

The burden is upon the appealing party to show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing;
(2) [t]he presentence report;
(3) [t]he principles of sentencing and arguments as to sentencing alternatives;
(4) [t]he nature and characteristics of the criminal conduct involved;
(5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
(6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. See State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. See Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. See State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. See Tenn. Code Ann. § 40-35-210(d); see Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See Fletcher, 805 S.W.2d at 789. In this case, we find the presumption of correctness applicable.

### Length of Sentence

Further, we find no error in this case in the court's giving a potential mitigating factor no weight. As a Class E felony Range II offender, the potential sentence was from two to four years. See Tenn. Code Ann. §§ 40-35-112(b)(5), 55-10-616. The trial court imposed a four-year sentence. We find no error in the trial court's applying two enhancing factors: that the defendant possesses a record of criminal activity and convictions in excess of that necessary to establish his Range II offender status and that he has a history of failing to obey conditions of release into the community. See Tenn. Code Ann. § 40-35-114(1), -(8). In mitigation, the trial court concluded that the

defendant's criminal conduct in the instant offense neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1).

Regarding the enhancement factors, the defendant's record extends for several pages and covers convictions from public intoxication to grand larceny and burglary, including numerous traffic offenses. The specified felony convictions, both resulting from Virginia, are sufficient basis for the trial court's concluding that the defendant is a Range II offender, see Tenn. Code Ann. § 40-35-106(1), (5) (two felony convictions of any type, including those from other states that constitute an offense cognizable in Tennessee would validate Range II classification for a Class E felony offense, the lowest felony classification in Tennessee), and the remaining offenses are sufficient to constitute a history of criminal convictions. Further, we note several instances in which the defendant incurred charges while released into the community from prior convictions. Indeed, as the instant charges were pending, he incurred two more arrests and convictions for violating Virginia's habitual traffic offender law. While on probation for a grand larceny conviction, he incurred eight separate convictions. Clearly, the trial court did not err by applying these factors.

We concur with the trial court that the relevant mitigation factor has very little or no weight in the instant case. Panels of this Court have found no error in trial courts' applying this mitigation factor regarding habitual traffic offender sentencing. See State v. Robert Lee Day, No. E1999-01380-CCA-CD (Tenn. Crim. App. filed May 25, 2000, at Knoxville); State v. Craig A. Hazlett, No. 01C01-9708-CC-00321 (Tenn. Crim. App. filed July 31, 1998, at Nashville); State v. Scotty Wayne White, No. 02C01-9709-CC-00372 (Tenn. Crim. App. filed April 13, 1998, at Jackson). But see State v. Michael Bellew, No. 02C01-9510-CC-00324 (Tenn. Crim. App. filed Feb. 27, 1997, at Jackson)(The trial court correctly did not apply the factor because the Motor Vehicle Habitual Offenders Act enacts the General Assembly's public policy and perception that some drivers are of such a threat that their very presence behind a wheel constitutes a threat of serious bodily injury to other drivers.). The defendant takes issue with the trial court's imposing the maximum sentence after recognizing the factor; however, a trial court may, after concluding that the enhancing factors greatly outweigh any evidence of mitigation, impose a maximum sentence. See, e.g., State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995).[1]

### Manner of Service

The defendant asserts that the trial court erroneously denied his motion for alternative sentencing under the Community Corrections Act of 1985. The defendant is not presumed a favorable candidate for alternative sentencing: As discussed above, he is a Range II offender whose criminal history evinces both a clear disregard for the laws and morals of society and failure at past efforts at rehabilitation. See Tenn. Code Ann. § 40-35-102(5), -(6). Even with this presumption, the defendant would carry the burden of establishing his suitability for a full alternative sentence.

---

[1] The defendant cites State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995), to support his argument that the trial court erred by imposing a maximum sentence after concluding that a crime posed little threat of death or serious bodily injury. In Hayes, however, a panel of this Court did not mandate that a finding of the factor required a sentence of less than the maximum but rather found the factor sufficiently present to lower the sentence. See id. at 187.

See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). Notwithstanding his arguments that he has responsibilities and a child on the way, he did not carry that burden. We note that he admitted to using marijuana while awaiting sentencing for the instant offense. Further, he was convicted of a felony failure to appear for the instant offense. Such conduct, especially in the context of the discussed background, argues for, not against, incarceration.

## CONCLUSION

We affirm the convictions and sentence from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE